The opinion of the Court was delivered by
Johnston, Ch.
I cannot concur in the decree against the defendant, Seaborn.
It is true that this defendant, (having been agent of the trustees,) is chargable with notice of the trusts, though he never saw or read the deed. But the offence for which the decree makes him responsible, is the having been a party to the purchase of the trust property, with a view to its being carried off: which is far from a necessary consequence of his knowledge of the trust deed.
It appears to me that Seaborn is shown to be above all suspicion in this matter. He cautioned E. M. Cobb against having any thing to do with the purchase; and the only fact that connects his name with the transaction, is, that one of several blank notes, which he had previously executed by way of lending his name as surety to Cobb for general purposes, was filled up and used by the latter for the purpose of taking up the demands of Campbell’s creditors. This was done in the absence of Seaborn, and without his knowledge.
With regard to the defendant, E. M. Cobb, I am of opinion the decree is sustained by the facts put in evidence, and the reasoning of the Chancellor; — to which nothing need have been added, had not a new point been suggested in the argument here.
The trust deed, (properly regarded as a post-nuptial settlement,) was not duly registered under the statute of 1823. The decree, however, holds the deed to be effectual as to E. M. *65 Cobb, who is concluded to have had notice of it; and the point raised here is, whether notice to a subsequent creditor or purchaser deprives him of the right of objecting to the non-registration of the instrument.
It is admitted to have been settled in the case of Fowke vs. Woodward, (a) and subsequent cases, and upon the soundest principles and authorities, that the parties to the instrument are as much affected by actual notice as they could be affected by the constructive notice arising from registration. But it is contended that the doctrine should not be extended to third persons. The objection assumes, for example, that though it is right to conclude the parties from averring against their deed, on the ground that, being parties to it, they must have full knowledge of it, — yet it would be wrong to conclude the scrivener who drew it up and attested its execution, and, therefore, had the same notice. It would be a fraud in either of the parties to defeat the provisions of an instrument of which they had notice: but an attesting witness may, without fraud, turn round, purchase the property, and defeat the conveyance.
It has always been the law, — and the authorities quoted in Fowke vs. Woodward, show it, — that it is fraud in any party, whether party to the instrument or stranger, to do any act going to frustrate or defeat the rights created by or arising under a deed of which he is cognizant: and the act done by him is set aside for that fraud, and the deed declared to be unaffected by it.
It is true that if the deed be incomplete, — if it be not fully executed, — and if it be left in that condition, — and there be no consideration in the case upon which a complete execution can be enforced; then, not only strangers, but the parties themselves, may disregard the instrument, notwithstanding their knowledge of what has been done towards its execution. It is null, and cannot affect them. But if all has been done that is necessary *66 to its execution, it is to be taken as a complete conveyance, and every attempt on tbe part of those who have notice of the fact, to destroy the rights existing under it, is to be treated as a fraud.
Now, in Fowke vs. Woodward, it was settled, as a necessary point in the case, that the statute of 1823, does not contemplate registration as part of the 'execution of the instrument. The terms of the statute were considered, and compared, among others, with those of the statute for the registration of leases, and the Pennsylvania statute for recording mortgages: and, taking the decisions in these analogous cases into consideration, it was deliberately held that the instrument was complete as to its execution the moment it was delivered. Besides being expressly decided, it was a necessary point in the judgment; for how could the Court make the deed binding on the parties, any more than on strangers, unless it was executed, so as to be in fact and in law a deed ?
If the deed, while unregistered, is a deed between the parties, why may it not be a deed as to third persons ? It is a deed between the parties because of their knowledge: why should it not operate as to others having knowledge ? It is a deed, a valid and effectual instrument, as to all who have knowledge or notice, whether party or stranger; and, if it be not so regarded in law, an agent by whom the instrument is transmitted for registration, may keep it off the registry for the statutory period, and then purchase and hold the property.
“ The Legislature,” as observed by Chief Justice McKean, in Levinz vs. Will, (b) “ did not mean, nor did they, in fact, enact that express personal notice when given, shall have no effect; nor could they entertain an idea of defeating fair and honest bargains.” The Chief Justice here refers to a principle which operates apart from, and would have operated if no registry law had ever been enacted. If we transport ourselves, *67 in imagination, to a time anterior to all laws requiring registration, we shall see that the principle to which he tacitly refers, was a principle necessary in the administration of justice: to wit., that the contracts entered into for the purpose of defeating prior contracts well known to the actors, are fraudulent, and should be set aside for mala fides. This principle still exists and must prevail, notwithstanding the enactment of recording Acts, unless expressly and clearly repealed in those Acts: just as a jurisdiction existing in a Court is not abrogated by the creation of a similar jurisdiction in another Court. The statute before me does not repeal the prior doctrine in relation to, the effect of notice, in terms: and the generality of its phrases should not be construed into a repeal, when we consider that the object of the statute was to extend and not to abridge the effect of notice, by providing additional means for communicating it: — thus superadding presumptive to actual notice for the preservation of existing contracts.
If I am not grossly mistaken, it is impossible to sustain the objection made in this case, without trenching upon the substance of what is decided in Fowke vs. Woodward. But there is a subsequent case which in my opinion very materially bears upon the objection brought forward here. I mean the case of Footman vs. Pendergrass.(c)
That was the case of a voluntary post-nuptial settlement made by a husband on his wife and children, which was not recorded. Several years after its execution, the husband borrowed money from a person who was held to have had notice of the deed, which debt he secured by a mortgage on the settled personal property. The difference between that case and the present, is, that in that case the defendant was a subsequent creditor; — here, he is a subsequent purchaser, or assisting in a subsequent purchase.
That difference was held, by Chancellor D unkin, in that *68 case, to be immaterial. “I am unable,” says be, “to find any decision of our own Courts, in which a deed has been declared voidfin favor of a subsequent purchaser, which would not have been declared void in favor of a creditor.”
And in that case it was held that the subsequent mortgagee was so affected by notice of the settlement, that his mortgage was disregarded, and the rights of the parties under the settlement enforced.
It is ordered that the bill be dismissed as against the defendant Seaborn; in all other respects the decree is affirmed and the appeal dismissed.
DáRGAn and WARDLAW, CC., concurred.

 Speer Eq. 233.

6) 1 Dallas, 430.

 3 Rick. Eq. 33.